UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN ANTHONY BOGINS,

                    Petitioner,

v.                                    Case No. 3:09-cv-572-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

### ORDER

### I. Status

Petitioner Bogins initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on June 15, 2009, pursuant to the mailbox rule. He challenges a 2002 state court (Clay County, Florida) judgment of conviction for sale or delivery of cocaine on twelve grounds. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause (Response) (Doc. #6); Exhibits (Resp. Ex.) (Doc. #7). On July 1, 2009, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #4), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on December 21, 2009. See Petitioner's Response (Reply) (Doc. #9). This case is ripe for review.

## II. Procedural History

On February 27, 2002, the State of Florida charged Bogins with sale or delivery of cocaine.  Resp. Ex. C at 4, Information. After jury selection, Bogins proceeded to trial.  Resp. Ex. D, Transcript of the Jury Trial (Tr.).  At the conclusion of the trial, a jury found Bogins guilty of sale or delivery of cocaine. Resp. Ex. C at 122, Verdict; Tr. at 169.  On November 6, 2002, the trial court sentenced Bogins, as a habitual felony offender, to a term of thirty years of imprisonment.  Id. at 160-65, Judgment.

On appeal, Petitioner, through counsel, filed an Initial Brief, raising two issues: (1) was there substantial competent evidence to submit to the jury, and (2) can the State Attorney file a second notice of intent to classify Petitioner as a habitual felony offender after the trial court denied the first request. Resp. Ex. F.  The State filed an Answer Brief.  Resp. Ex. G.  On December 30, 2003, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion.  Bogins v. State, 866 So.2d 1213 (Fla. 1st DCA 2003); Resp. Ex. H.  The court denied Petitioner's motion for rehearing on February 16, 2004.  Resp. Exs. I; J.  The mandate issued on March 3, 2004.  Resp. Ex. K.  Petitioner did not seek review in the United States Supreme Court.

On April 6, 2004, Petitioner filed a pro se petition for writ of habeas corpus, asserting that appellate counsel failed to raise

on direct appeal the following issue: Petitioner was not formally charged with sale or delivery of cocaine.  Resp. Ex. M.  The appellate court denied the petition on the merits on May 5, 2004. Resp. Ex. N.  On June 17, 2004, the court denied Petitioner's motion for rehearing.  Resp. Exs. O; P.

On May 19, 2004, Petitioner filed a <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion).  Resp. Ex. X at 1-75.  Petitioner twice amended the motion in 2006.  <u>Id</u>. at 133-41, 206-15.  In his requests for post conviction relief, Petitioner alleged that his counsel was ineffective because he: failed to properly object, move for a mistrial, and preserve for appeal the issue of the State's bolstering the credibility of its key witness (ground one); failed to challenge the court's jurisdiction when the State never formally arrested him for the crime (ground two); failed to impeach Nellie Quigley, the confidential informant, with deposition testimony about being searched (ground three); failed to depose Joe Purvis (ground four); solicited inadmissible hearsay testimony from the State's key witness and failed to properly object to harmful hearsay testimony and preserve for appellate review (ground five); failed to object to Quigley's in-court identification of Petitioner (ground six); misadvised him regarding the statutory maximum penalty of thirty years imprisonment, thereby causing Petitioner to reject the State's offer of thirteen months (ground seven); failed

3

to inform Petitioner of the possibility of habitualization (ground eight); and failed to exclude the cocaine based on alleged tampering and/or a chain of custody violation (ground nine). Resp. Ex. X at 1-43, 136-41, 209-15.

Additionally, Petitioner filed a <u>pro</u> <u>se</u> motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a) on August 22, 2007. <u>Id</u>. at 373-413. Petitioner also filed a second <u>pro</u> <u>se</u> Rule 3.850 motion on September 11, 2007, asserting that the trial court lacked subject matter jurisdiction to enter the judgment and sentence when the State had filed a deficient Information (ground one), and the State's Information did not properly invoke the court's jurisdiction since it did not include a proper sworn oath (ground two). <u>Id</u>. at 414-38.

The trial court held an evidentiary hearing on August 7, 2007, at which Petitioner's trial counsel (V. Curtis Davidson, II) testified. <u>Id</u>. at 310-72, Transcript of the Evidentiary Hearing (EH Tr.). On November 30, 2007, the court denied the Rule 3.850 motion and amendments (grounds one through eight) and the second Rule 3.850 motion as well as the motion to correct illegal sentence. <u>Id</u>. at 459-79, 449-450, 656.

On December 12, 2007, Petitioner filed notices of appeal. <u>Id</u>. at 647, 649, 651. That same date, Petitioner also filed a motion for rehearing, asserting that the trial court did not resolve ground nine of his post conviction motion. <u>Id</u>. at 653-62. After

the appellate court relinquished jurisdiction to the trial court to address ground nine, the trial court denied the motion with respect ground nine on May 1, 2008.  Resp. Ex. Z at 1-6.

Petitioner appealed the denial of the Rule 3.800 motion and filed a brief.  Resp. Ex. S.  The State filed a notice that it would not file an Answer Brief.  Resp. Ex. T.  On September 24, 2008, the appellate court affirmed the denial per curiam, see Bogins v. State, 991 So.2d 858 (Fla. 1st DCA 2008); Resp. Ex. U, and the mandate issued on October 21, 2008, see Resp. Ex. V.

Petitioner also appealed the denial of his Rule 3.850 motions and filed a brief.  Resp. Ex. AA.  The State filed an Answer Brief, and Petitioner filed a Reply Brief.  Resp. Exs. BB; CC.  On March 30, 2009, the appellate court affirmed the denial per curiam, see Bogins v. State, 6 So.3d 54 (Fla. 1st DCA 2009); Resp. Ex. DD, and the mandate issued on April 27, 2009, see Resp. Ex. EE.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 17-18.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).

5

"It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:
>
> > A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to

> > extend a clearly established legal
> > principle to a new context. An
> > application of federal law cannot be
> > considered unreasonable merely
> > because it is, in our judgment,
> > incorrect or erroneous; a state
> > court decision must also be
> > unreasonable. Questions of law and
> > mixed questions of law and fact are
> > reviewed <u>de</u> <u>novo</u>, as is the district
> > court's conclusion regarding the
> > reasonableness of the state court's
> > application of federal law.
>
> <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted). In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable." <u>Williams</u>, 529
> U.S. at 409, 120 S.Ct. at 1521. Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[1]
> 28 U.S.C. § 2254(e)(1).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1155-56 (11th Cir. 2010), <u>cert</u>.

<u>denied</u>, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

---

[1] This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." <u>Bui v.
Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas
> corpus, a state prisoner must exhaust
> available state remedies, 28 U.S.C. §
> 2254(b)(1), thereby giving the State the
> "'"opportunity to pass upon and correct"
> alleged violations of its prisoners' federal
> rights.'" Duncan v. Henry, 513 U.S. 364, 365,
> 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per
> curiam) (quoting Picard v. Connor, 404 U.S.
> 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971))
> To provide the State with the necessary
> "opportunity," the prisoner must "fairly
> present" his claim in each appropriate state
> court (including a state supreme court with
> powers of discretionary review), thereby
> alerting that court to the federal nature of
> the claim. Duncan, supra, at 365-366, 115
> S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S.
> 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1
> (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

Recently, the United States Supreme Court discussed the

doctrine of procedural default:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state-court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including
> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. See,
> e.g., Coleman,[2] supra, at 747-748, 111 S.Ct.
> 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

> requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012).

Thus, procedural defaults may be excused under certain circumstances: notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Maples v. Thomas</u>, 132 S.Ct. 912, 922 (2012) (citations omitted); <u>In Re Davis</u>, 565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999), cert. denied, 528 U.S. 934 (1999).

In Martinez, the Supreme Court modified the general rule in Coleman[3] to expand the "cause" that may excuse a procedural default. Martinez, 132 S.Ct. at 1315.

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland

---

[3] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" Maples v. Thomas, 132 S.Ct. 912, 922 (citing Coleman, 501 U.S. at 753). The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent. Coleman, 501 U.S. at 753-54. In Coleman, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. Id. at 755. However, the Martinez Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

> v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

Id. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S.Ct. at 2649.[4] "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Id. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted

---

[4] Murray v. Carrier, 477 U.S. 478 (1986).

him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).  Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324).  With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[5] A reasonable probability is a probability sufficient to undermine confidence in the outcome."[6]  <u>Id</u>., at 694, 104 S.Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id</u>., at 687, 104 S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

---

[5] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, Petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).  Where ineffective assistance of counsel results in a rejection of the plea offer and the defendant is convicted at the ensuing trial, the defendant "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (<u>i.e.</u>, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1385 (2012).

[6] <u>See</u> <u>Davis v. Sec'y for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted) ("[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved.").

The two-part Strickland test applies to ineffective assistance claims concerning both the decision to accept a guilty plea offer and the decision to forgo a plea offer and stand trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation omitted). "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[7], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664,

---

[7] Knowles v. Mirzayance, 556 U.S. 111 (2009).

15

124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Bogins claims that there was not competent substantial evidence to submit the case to the jury. Petitioner asserts:

> On April 10, 2001, Ms. Nellie Quigley (C.I.) was facing prosecution for possession of cocaine and sales of ecstasy (Exhibit "A")[.] She was a paid informant trying to make drug deals for Detective Michon in order for him to recommend leniency in her case. She never met or knew of the defendant before April 10, 2001. Her husband, Joe Purvis[,] set up the alleged drug deal. She could not identify the defendant, she did not remember if she or her husband was driving, she did not remember whether or not she bought the cocaine at the time her car got a jump, she did not remember whether her battery was in fact dead. Detective Michon and Officer Brown did not witness the alleged transaction. The State concedes the video did not show a transaction. The State did not call Officer Brown or Joe Purvis as witnesses, however, both were listed

16

as state witnesses. In trial[,] Detective
Michon and the C.I. testified the defendant
handed the C.I. (6) six pieces of crack
cocaine, but on April 10, 2001, Detective
Michon submitted (10) ten pieces of crack
cocaine into the property room. (Exhibit "B")
Also, on April 16, 2001, Detective Michon
states "the defendant handed the C.I. (10)
pieces of crack cocaine." (Exhibit "C") On
April 12, 2002, Deputy Barton submitted 0.9
grams (Exhibit "D").  In trial[,] Chemist
Glenn Abate testified "the package had been
opened and was not in the same condition he
last seen [sic] it in." (Exhibit "E")

Petition at 8, 19.  Petitioner argued this issue on direct appeal,

see Resp. Ex. F at 7-9, the State filed an Answer Brief, see Resp.

Ex. G at 11-20, and the appellate court affirmed Petitioner's

conviction and sentence per curiam without a written opinion

concerning this issue, see Bogins, 866 So.2d 1213.  To the extent

that Petitioner is raising, in ground one, the same claim he

presented on direct appeal, the claim is sufficiently exhausted.

The State, in its appellate brief, addressed the claim on the

merits.  Resp. Ex. G at 17-20.  Thus, the appellate court may have

affirmed Petitioner's conviction based on the State's argument on

the merits. If the appellate court addressed the merits, Petitioner

would not be entitled to relief because the state court's

adjudication of this claim is entitled to deference under AEDPA.[8]

After a thorough review of the record and the applicable law, the

Court concludes that the state court's adjudication of this claim

---

[8] See Wright, 278 F.3d at 1255.

17

was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Petitioner's claim, nevertheless, is without merit because the State presented ample evidence to support Petitioner's conviction.  The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt.  Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998).  In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State."  Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)).  Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dept. of Corr., 395 Fed.Appx. 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)) (not selected for publication in the Federal Reporter), cert. denied, 131 S.Ct. 1488 (2011).  In accordance with this authority, the relevant question is whether

any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 319.

At the trial, the State called Nellie Quigley (formerly known as Nellie Purvis) as its first witness. Tr. at 64. Quigley testified that she had two felony convictions from twenty years ago, had a history of drug abuse, and had been addicted to pain medication and ecstasy. <u>Id</u>. at 64-65. She stated that she had worked as a confidential informant for Detective Greg Michon in the past. <u>Id</u>. at 65. She recalled that she had met with Michon in her home on April 10, 2001, in order to arrange a drug deal. <u>Id</u>. at 66. Quigley's husband, Joe Purvis, called Petitioner to arrange the deal. <u>Id</u>. at 66-67. Quigley explained that, prior to Quigley having any contact with Petitioner, the police searched her, her husband, and their car. <u>Id</u>. at 68-69.

Quigley testified that she and her husband met Petitioner at a Winn-Dixie parking lot in Clay County. <u>Id</u>. at 69-70. Quigley and her husband raised the hood of the car so that Petitioner could identify them. <u>Id</u>. at 70. When Quigley asked Petitioner for some crack cocaine, he responded that he would go get it. <u>Id</u>. at 71. Within a few minutes, Petitioner returned and exchanged crack cocaine for the one hundred dollars that the police had given to Quigley for the purchase. <u>Id</u>. at 71-72. After the exchange,

Quigley and her husband met with police and gave them the cocaine. Id. at 72.

Quigley testified that, after the transaction, the police again searched her, her husband, and the car. Id. at 72-73. According to Quigley, the police videotaped and audiotaped the transaction. Id. at 69, 73-75. The videotape of the incident was played for the jury. Id. at 76.

On cross-examination, Quigley testified that, when she contacted police regarding an undercover buy, she was on bail for the sale of an illegal narcotic substance. Id. at 79. Quigley contacted Detective Michon in order to get help with her pending drug charge. Id. at 80. Quigley testified that she was never formally prosecuted for the charge because she went to drug court. Id. Quigley admitted that she and her husband were former drug users. Id. at 82. She also acknowledged that she was unsure of many of the details of the transaction, such as: the denomination of the bills the police gave her, what time she and her husband arrived at the Winn-Dixie parking lot, whether her car battery had been dead on that date, and how the crack cocaine she received from Petitioner had been packaged. Id. at 84-87, 90.

Detective Michon, a deputy sheriff with the Clay County Sheriff's Office, was the next witness for the State. Id. at 97. He testified that he used confidential informants for undercover drug buys and that they were usually compensated with either money

20

or a reduction in their pending criminal charges.  Id. at 98.
Michon explained that he used confidential informants because they
are familiar with the street lingo and know how to purchase illegal
drugs on the streets.  Id.

Michon testified that he had worked with Quigley on and off
since 1999.  Id. at 99.  He explained that Quigley had contacted
him just prior to April 10, 2001, and offered to set up an
undercover drug buy.  Id.  Quigley and her husband contacted an
individual and set up a meeting at the Winn-Dixie parking lot.  Id.
at 100.  Michon testified that, according to standard operating
procedure, they searched Quigley, her husband, and their vehicle.
Id. at 100-01.  Michon stated that they followed Quigley's car to
the Winn-Dixie and Quigley did not come into contact with anyone
other than Petitioner.  Id. at 102.

According to Michon, he observed the transaction from
approximately thirty yards away, monitored the transaction by
audiotape, and also videotaped the incident. Id. at 103-04.  Michon
heard Quigley tell Petitioner that her car needed a jump start and
then saw Quigley come into contact with Petitioner in the Winn-
Dixie parking lot.  Id. at 104.

Michon heard Quigley ask Petitioner for some crack cocaine, to
which Petitioner responded he would be back in five minutes. Id. at
105.  Petitioner returned about seven minutes later and made an
exchange with Quigley through the passenger's side window of

21

Petitioner's car.  Id. at 106.  Michon testified that he was unable to see exactly what was exchanged through the passenger's side window due to the tinting on the windows.  Id. at 106, 118.

After the exchange, Quigley and her husband met Michon at a pre-determined location, where Michon seized the crack cocaine from them.  Id. at 106.  Michon testified that, upon searching Quigley, her husband, and the car, he found no additional drugs.  Id. at 107.  He never lost sight of Quigley and her husband, and at no time did the couple come into contact with anyone other than Petitioner.  Id.  Michon identified State's Exhibit B as Ziploc baggies containing the crack cocaine seized from Quigley.  Id. at 107-08.  Michon identified Petitioner in court as the man he observed make an exchange on that day with Quigley.  Id. at 104.

Glenn William Abate, a crime laboratory analyst, testified that he tested State's Exhibit B, the substance which was purchased from Petitioner.  Id. at 121-22.  He testified that he identified the tested substance as cocaine.  Id. at 125.  After Abate's testimony, the State rested.  Id. at 127.  The defense moved for a judgment of acquittal, which the court denied.  Id.  After defense counsel conferred with Petitioner and Petitioner elected not to testify, counsel renewed the motion for judgment of acquittal.  Id. at 131.  The defense did not present any witnesses.  Id.  The jury found Petitioner guilty of sale or delivery of cocaine, as charged in the Information.  Id. at 169.

22

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner committed the offense of sale or delivery of cocaine.  The State had substantial evidence against Petitioner.  Michon's testimony provided the jury with strong circumstantial evidence of a sale of cocaine.  Moreover, in addition to Michon's testimony, Quigley provided direct evidence of the transaction.  While Petitioner argues that Michon did not see the actual exchange of drugs for money and that the videotape did not show the drug transaction, Michon watched Quigley and her husband the entire time, searched them and their car before and after the transaction, and then retrieved cocaine from Quigley after the exchange.  Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for sale or delivery of cocaine.  Competent evidence relating to each of the elements of the offense was introduced at trial, and no due process violation occurred.  The jury was entitled to believe the State witnesses' accounts of what happened that day.  Therefore, Petitioner is not entitled to habeas relief on ground one.

### B. Ground Two

As ground two, Petitioner claims that the State improperly filed a second notice of intent to classify Petitioner as a habitual felony offender after the trial court denied the first request.  Petitioner argued this issue on direct appeal, <u>see</u> Resp.

Ex. F at 10-11, the State filed an Answer Brief, see Resp. Ex. G at 21-23, and the appellate court affirmed Petitioner's conviction and sentence per curiam without a written opinion concerning this issue, see Boqins, 866 So.2d 1213.   To the extent that Petitioner is raising, in ground two, the same claim he presented on direct appeal, such a claim presents an issue of purely state law that is not cognizable on federal habeas review.   See Response at 25.

Even assuming Petitioner raised this as a federal constitutional claim on direct appeal, the State, in its appellate brief, addressed the claim on the merits.   Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits.   If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[9]   After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference,

---

[9] See Wright, 278 F.3d at 1255.

Petitioner's claim is without merit.  After the September 20, 2002 jury trial, the State filed a notice of intent to classify Petitioner as a habitual felony offender on September 25th.  Resp. Ex. C at 123-24.  During an October 9, 2002 hearing, the State withdrew the notice after defense counsel argued that one of the felonies upon which the State relied was a subsequent conviction. Id. at 195-97.  A few days later, the State filed a second notice of intent to classify Petitioner as a habitual felony offender. Id. at 132.  On November 6th, the court granted the State's request and sentenced Petitioner, as a habitual felony offender, to thirty years of imprisonment.  Id. at 199-226.

The State's original notice was improper because it alleged eligibility for habitualization based upon a judgment entered subsequent to the commission of the charged offense.  Thus, the State properly withdrew that notice.  In its second notice, the State relied upon a different judgment of conviction, which was entered prior to the instant offense.  Given the record, neither the State nor the trial court erred.  Therefore, Petitioner is not entitled to habeas relief on ground two.

## C. Ground Three

As ground three, Petitioner claims counsel was ineffective because he failed to properly object, move for a mistrial, and preserve for appeal the issue concerning the State bolstering Quigley's testimony.  As acknowledged by the parties, Petitioner

25

raised this claim in his Rule 3.850 motion.  Identifying the two-prong <u>Strickland</u> ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating:

> In the Defendant's first ground for relief, he alleges three subclaims that defense counsel rendered ineffective assistance of counsel when he failed to "properly object, move for mistrial and preserve the issue where the state improperly bolstered the credibility of its key witness." (Defendant's Motion at 5.) Specifically, the Defendant argues that three of the prosecutor's statements during closing arguments bolstered the credibility of the State's witness, Nellie Purvis Quigley. Initially, this Court notes that attorneys are allowed a wide latitude to argue to the jury during closing argument. <u>Breedlove v. State</u>, 413 So.2d 1, 8 (Fla. 1982). Attorneys may also draw logical inferences and advance legitimate arguments in their closing statements. <u>Thomas v. State</u>, 748 So.2d 970, 984 (Fla. 1984). Therefore, when a defendant claims that a prosecutor has made an improper comment during closing argument such that a new trial is required, the defendant must show that,
>
>> the comments must either deprive the Defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that [sic] it would have otherwise.
>
> <u>Walls v. State</u>, 926 So.2d 1156, 1167 (Fla. 2006), citing <u>Spencer v. State</u>, 645 So.2d 377, 383 (Fla. 1994).

In the first subclaim, the Defendant alleges that defense counsel failed to object to the prosecutor's statement that Ms. Quigley "didn't have to testify, and that her case was over. She graduated from drug court." (Exhibit "C," pages 145-46.) The Defendant's claim is knowingly false and misleading. Defense counsel immediately objected to the prosecutor's statement as follows:

State: . . . Now, the defense argued that she scratched Detective Michon's back and he scratched hers. Well, that's how it works. That's how it works. She's a drug user at the time. She wasn't going to just do it for nothing. She wanted to help herself. But keep in mind that she's here today testifying. She doesn't have to be. Her case is over. She graduated from drug court. She doesn't have to be here today testifying, telling all these people she has never met before that she was a drug abuser, that she's a convicted felon, laying [it] all out on the line. She doesn't have somebody here –

Defense Counsel: I'll object, Your Honor, to that line of questioning. She's under subpoena.

The Court: There's no question. Argument, you mean?

Defense Counsel: I mean, line of argument. I'm sorry.

The Court: Right. You're welcome in your closing argument to –

Defense Counsel: Yes, sir.

The Court: She is under subpoena though.

State: Yes, she is.

27

The Court: All right.

(Exhibit "C," pages 145-146.) While the Defendant is correct that the Court did not rule on defense counsel's objection, defense counsel's objection led the Court to clarify for the jury that Ms. Quigley was testifying because she was under subpoena. (Id.) Moreover, defense counsel's timely objection preserved the issue for appeal, and defense counsel reiterated his position during rebuttal arguments:

> She -- the State said she h[a]d no obligation to be here. Ladies and gentlemen, she's under subpoena. That's a court order. She had every obligation to be here and testify, and I'm telling you that she can be held in contempt of court if she didn't honor that subpoena. And that's true of any witness, including Detective Michon. Yes, she had to be here.

(Exhibit "C," page 153.) As defense counsel did in fact object to the prosecutor's statement, the Defendant has failed to show error as required by Strickland, and the first subclaim is denied.

The Defendant alleges in the second subclaim that defense counsel failed to object to the prosecutor's argument to the jury that "when you look at [Ms. Quigley's] testimony, if there is an issue of credibility there and you look at her testimony, look how its consistent with the video." (Exhibit "C," page 146.) The prosecutor's argument was simply a statement advising the jury to test Ms. Quigley's credibility with the videotape that was entered into evidence. This Court finds that the prosecutor's argument was not improper, because "[m]erely arguing a conclusion that can be drawn from evidence is permissible fair comment in closing." Reyes v. State, 700 So.2d 458, 460-61 (Fla. 4th DCA 1997), citing Mann v. State, 603 So.2d 1141,

1143 (Fla. 1993); see also Bertolotti v. State, 476 So.2d 130 (Fla. 1985) (noting that the proper purpose of closing argument is to review evidence and to explicate those inferences which may reasonably be drawn from the evidence). Thus, there were no grounds for defense counsel to object.

Additionally, this Court notes that in defense counsel's closing statements, he also encouraged the jury to test the credibility of Ms. Quigley's testimony with what they saw on the videotape:

> We talked at jury selection [that] what the witnesses remember is very important, because the State has the burden of proof in this case. Ms. Quigley's been a confidential informant in the past. I don't know if it's for money or working off prior cases or whatever, but she's been an informant in the past. She knows how the game is played. She knows what she has to do to help herself and she told Detective Michon what he wanted to hear -- not necessarily what he wanted to hear, but what she wanted him to hear to make a drug case. Because if she didn't make a drug case for him, he doesn't help her. She told you she's a prior convicted felon with a pending criminal case; he doesn't help her and she's in a lot of trouble.

> Now, remember the video that you saw. It only took a couple of minutes. Remember her testimony. Remember what she said. Remember any motive or reasons for making sure she tells Detective Michon what she wants him to hear. Pay close attention to all that.

(Exhibit "C," pages 136-37.) Defense counsel did exactly what the State did: he made Ms.

Quigley's credibility a central issue for the jury. Thus, this Court finds that defense counsel's actions were proper and well within the wide range of reasonable professional assistance as required by <u>Strickland</u>, and the Defendant's second subclaim is denied.

In the third subclaim, the Defendant avers that defense counsel provided ineffective assistance of counsel when he failed to object to the prosecutor's argument to the jury that:

> In order to believe that [Ms. Quigley's] motive for testifying here today and conducting that transaction to help herself that she would make up facts that she got this cocaine from this defendant, and you have to force it because it doesn't fit with the rest of the evidence; [the Defendant] came back, he came back a second time, it doesn't fit, you have to force yourself, and that's not reasonable doubt.

(Exhibit "C," page 150.) As explained in subclaim one, <u>supra</u>, "Merely arguing a conclusion that can be drawn from evidence is permissible fair comment in closing." <u>Reyes</u>, 700 So.2d at 460-61 (citations omitted). This Court finds that the prosecutor did not act outside of the scope of closing arguments when she argued that the evidence did not show a motivation for Ms. Quigley to lie. Thus, there were no grounds for defense counsel to object.

Additionally, just as the State argued that based on the evidence Ms. Quigley had no motive to lie, defense counsel asserted that the evidence showed Ms. Quigley had plenty of motivation to fabricate her story:

> She had every motive to testify the way to help Detective Michon, the way he wanted her to, whether it's true or not. Because if he didn't

> help her, she -- he wouldn't scratch
> her back and then she faces the
> criminal charge which ultimately was
> dropped by the State Attorney's
> Office. Was she offered money or
> preferred treatment? You bet she
> was. She admits it. Detective Michon
> admits it.

> (Exhibit "C," pages 155-56.) Defense counsel's
> actions were proper and well within the wide
> range of reasonable professional assistance,
> and the Defendant's third subclaim is denied.

Resp. Ex. X at 460-64. Upon Petitioner's appeal, the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion as to this claim on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim

31

is, nevertheless, without merit.  The record supports the trial court's findings.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.[10]  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  Dingle v. Sec'y for Dept. of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer

---

[10] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Victor Curtis Davidson, II, was admitted to the Florida Bar in 1987. See http://www.floridabar.org.  Thus, at the time of Bogins' trial in September 2002, Davidson had been practicing law for approximately fifteen years.  Moreover, at the time of the evidentiary hearing in 2007, Davidson testified that he had practiced law for twenty years. See EH Tr. at 326-27.

at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007).  Petitioner has failed to carry this burden.

Given the record, counsel's performance was within the wide range of professionally competent assistance.  Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence.  Tr. at 59; <u>see</u> <u>Hammond v. Hall</u>, 586 F.3d 1289, 1334 (11th Cir. 2009), <u>cert</u>. <u>denied</u>, 131 S.Ct. 917 (2011); <u>Brown v. Jones</u>, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), <u>cert</u>. <u>denied</u>, 534 U.S. 1085 (2002).  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the prosecutor's comments and requested a mistrial.  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.[11]

------

[11] As previously stated, with respect to an ineffectiveness claim that trial counsel failed to preserve the issue for appeal, the appropriate prejudice inquiry is whether "there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." <u>Davis</u>, 341 F.3d at 1316.

### D. Ground Four

As ground four, Petitioner claims that counsel was ineffective because he failed to challenge the trial court's jurisdiction based on the State's alleged failure to formally arrest Petitioner. Petitioner raised this claim in his Rule 3.850 motion. Ultimately, after an evidentiary hearing on the issue, the trial court denied the motion with respect to this issue, stating:

> In the Defendant's second ground, he alleges that defense counsel was ineffective for failing to challenge this Court's jurisdiction. The Defendant claims that this Court lacked jurisdiction because he was improperly stopped and later arrested in Duval County on a Clay County warrant that he states never existed. (Defendant's Motion at 10.) The Defendant's claim is false and misleading. The Arrest Warrant in the instant case was issued on June 19, 2001. (Exhibit "D.")[12] Accordingly, the Defendant's second ground is denied.

Resp. Ex. X at 464; EH Tr. at 317-22. On Petitioner's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the

---

[12] See Resp. Ex. C at 2, Arrest Warrant, dated June 19, 2001.

applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit. As stated by the post-conviction court in denying the Rule 3.850 motion, the Arrest Warrant was issued on June 19, 2001 from Clay County. When Bogins was arraigned in a separate criminal case in Duval County on August 18, 2001, in relation to an August 17, 2001 arrest for possession of cocaine and cannabis, the Duval County judge informed Bogins that there was an outstanding Clay County warrant for his arrest on a sale of cocaine charge. See Resp. Ex. X at 385. The trial court's jurisdiction is invoked in a criminal case by the filing of an accusatory pleading, such an Indictment or Information. See Carbajal v. State, 75 So.3d 258 (Fla. 2011). Indeed, the trial court had subject matter jurisdiction over Bogins' case since the Information charged Bogins with sale or

delivery of cocaine in violation of Florida Statutes section
893.13(1)(a)1.  <u>See</u> Resp. Ex. C at 4; EH Tr. at 317-22.  Thus,
Petitioner's ineffectiveness claim is without merit since he has
shown neither deficient performance nor resulting prejudice.  <u>See</u>
Response at 34-35.

### E. Ground Five

As ground five, Petitioner claims counsel was ineffective
because he failed to impeach Quigley and Detective Michon.  As
acknowledged by the parties, Petitioner raised this ground in his
Rule 3.850 motion.  After an evidentiary hearing on the issue, the
court denied the motion with respect to this claim, stating in
pertinent part:

> [He] presents four subclaims that defense
> counsel was ineffective for failing to impeach
> the credibility of the State's witnesses,
> Nellie Purvis Quigley and Detective Gregory
> Michon. (Defendant's Motion at 12-19.) In
> subclaim one, the Defendant claims that Ms.
> Quigley's deposition testimony varied from her
> trial testimony as to what part of her
> clothing was searched prior to her contact
> with the Defendant. In her deposition, she
> stated that Detective Michon always searched
> her car and her purse, but that Detective
> Michon did not frisk her body at all. (R. at
> 93.) At trial, she stated that the Detective
> performed a search of her car, her person, her
> pockets, and her shirt and bra. (Exhibit "C,"
> page 68.) The Defendant believes that defense
> counsel should have cross examined her on this
> inconsistency. At the evidentiary hearing,
> defense counsel testified as follows:
>
> > State:   Have you reviewed the
> > answers that were given by Nellie

Purvis Quigley during deposition and during the trial?

Defense Counsel:  I have.

State:  And did you see any major inconsistencies in her answers?

Defense Counsel: No, I did not, not concerning the search at all.

State:  Ok. Did she testify in a more detailed fashion during the trial about the search prior to the deal?

Defense Counsel: I believe she did, yes.

State:  Was it necessarily inconsistent with her answer during the deposition?

Defense Counsel:  No, it was not inconsistent.

State: Ok. And why was it not inconsistent in your opinion?

Defense Counsel: She testified -- she answered my questions in deposition that I asked her. They were not the same questions asked by the state in trial, and there were no major inconsistencies there. She testified that she was searched prior to being sent to do this drug deal and -- both her person and her purse and her vehicle, as well as the person she was with was searched as well.

State: And would it have been effective to bring up her saying she was searched during the deposition during cross examination, in your opinion?

> Defense Counsel: No. I did not want
> to reiterate that in front of the
> jury. It wasn't part of the defense.
> It would not help Mr. Bogins' case
> at all.

(Exhibit "E," pages 18-20.)[13] Based on defense counsel's testimony, this Court finds that it was defense counsel's tactical decision to not draw attention to the manner in which Ms. Quigley was searched, and as such, this cannot be deemed to be ineffective assistance. <u>Songer v. State</u>, 419 So.2d 1044 (Fla. 1982); <u>Gonzalez v. State</u>, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, subclaim one is denied.

In subclaim two, the Defendant claims that Ms. Quigley's deposition testimony varied from her trial testimony as to whether she had seen the videotape of her contact with the Defendant. The Defendant believes that defense counsel should have cross examined her on this issue. At the evidentiary hearing, defense counsel testified as follows:

> State:   Regarding that videotape,
> the confidential informant testified
> at the trial that she had watched
> the videotape of the deal prior to
> trial, correct?
>
> Defense Counsel: Yes.
>
> State:   And that she had initialed
> and dated the tape that she watched?
>
> Defense Counsel: She did.
>
> State:   And she did that for the
> purpose of meeting the foundational
> requirements to admit the videotape,
> correct?

---

[13] <u>See</u> EH Tr. at 327-29.

Defense Counsel:  Yes.

State:  Is that common?

Defense Counsel:  Yes, it is.

State:  And she testified that the video truly and accurately depicted what occurred between her and the defendant, correct?

Defense Counsel:  She, did.

State:  Was it significant to you that she watched the videotape -- that she had not watched the videotape when you deposed her?

Defense Counsel:  She actually watched it during deposition.

State: Okay.

Defense Counsel: But -- it was shown by the state, but not prior to deposition she had not.

State:  Okay.  And was there any inconsistency in her testimony about watching that videotape?

Defense Counsel:  No, ma'am. No.

(Exhibit "E," pages 21-22.)[14] This Court specifically finds defense counsel's testimony both more credible and persuasive than the Defendant's testimony and allegations. Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). Additionally, based on defense counsel's testimony, this Court finds that it was defense counsel's tactical decision to not question Ms. Quigley as to when she watched the videotape, and as such, this cannot be deemed to be ineffective assistance. Songer v. State, 419 So.2d 1044 (Fla. 1982); Gonzalez v.

---

[14] See EH Tr. at 330-31.

State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, subclaim two is denied.

In subclaim three, the Defendant claims that Detective Michon's deposition testimony varied from his trial testimony as to what part of Ms. Quigley's clothing he searched prior to her contact with the Defendant. In his deposition, he stated that he just did a pat-down search, pulled her pockets out, and looked through her purse. (R. at 56.) However, at trial he testified that he searched her shoes and socks, had Ms. Quigley pull out her pockets, pull out her shirt, and pull the bottom of her bra out and shake it out. (Exhibit "C," pages 101, 114.) He also stated that he did an extensive search of the car to make sure that Ms. Quigley was not hiding any drugs, money or weapons. (Id.) The Defendant believes that defense counsel should have cross examined Detective Michon on these inconsistencies. At the evidentiary hearing, defense counsel testified as follows:

> State:     Did you also review Detective Greg Michon's answers regarding the search?

> Defense Counsel:  I did.

> State: And did you see any major inconsistencies between his testimony during the deposition and his testimony during the trial on the issue of the search of Nellie Purvis Quigley prior to the deal?

> Defense Counsel: No, I didn't.

> State: Did you have any evidence to support a defense that Nellie Purvis Quigley had snuck the cocaine in?

> Defense Counsel:  No, I didn't.

40

(Exhibit "E," page 20.)[15] Based on defense counsel's testimony, this Court finds that it was defense counsel's tactical decision to not question Detective Michon further as to how he searched Ms. Quigley, and as such, this cannot be deemed to be ineffective assistance. Songer v. State, 419 So.2d 1044 (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, subclaim three is denied.

In subclaim four, the Defendant claims Ms. Quigley and Detective Michon testified that the Defendant sold or delivered six pieces of crack cocaine to Ms. Quigley. (Exhibit "C," pages 89-90, 114-15.) However, the Defendant states that the Property and Evidence Report dated April 10, 2001, lists ten pieces of crack cocaine. (Exhibit "F.") The Defendant believes that defense counsel should have cross examined Ms. Quigley and Detective Michon on this inconsistency. At the evidentiary hearing, defense counsel testified as follows:

> State:  Regarding the actual number of rocks of crack that were involved in this sale, did you address with either Detective Michon or with the FDLE analyst the actual number of crack rocks?

> Defense Counsel:  I remember the weight of .09 grams in the report. Ms. Quigley testified that she had obtained about five or six pieces of rocks. It was brought out on direct examination by Ms. Dixon during the trial by the -- during the FDLE analyst's testimony -- that the handling of these rocks frequently causes them to break apart.

---

[15] See EH Tr. at 329.

State:    Okay.  Did  you  find  it
significant  at  all  that  there  was
some kind of discrepancy between the
actual number of pieces?

Defense Counsel: No, I didn't.

State:   And  was  Detective  Michon
clear  in  his  testimony  that  he
received the crack from Ms. Purvis
and put it directly into property
that day?

Defense  Counsel:  That  was  his
testimony, yes.

State:  And was there, in fact, a
clear  chain  of  custody  with  that
evidence, the crack?

Defense Counsel: Yes, it was.

. . .

State:  Did you have any evidence on
which to base an allegation that the
evidence had been tampered with?

Defense Counsel:  No, ma'am.

(Exhibit  "E,"  pages  22-25.)[16]  Based  on
defense counsel's testimony, this Court finds
that  it  was  defense  counsel's  tactical
decision  to  not  question  Detective  Michon  or
Ms. Quigley further as to the number of pieces
of crack purchased, and as such, this cannot
be deemed to be ineffective assistance. Songer
v. State, 419 So.2d 1044 (Fla. 1982); Gonzalez
v.  State,  579  So.2d  145,  146  (Fla.  3d  DCA
1991) ("Tactical decisions of counsel do not
constitute   ineffective   assistance   of
counsel.")  Accordingly,  subclaim  four  is
denied.

---

[16] See EH Tr. at 331-32, 334.

Resp. Ex. X at 465-70.   Following an appeal by Bogins, the appellate court affirmed the denial per curiam.

The appellate court may have affirmed the denial of the post conviction motion on the merits.   If the appellate court addressed the merits, there are qualifying state court decisions.   Assuming so, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.   Having reviewed the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even absent a decision entitled to deferential review under AEDPA, this Court finds this challenge to be without merit.   The trial court's conclusion is fully supported by the record.   After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner Bogins.   The Court notes that credibility determinations are questions of fact.   See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and

credibility determinations).  Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence.  <u>See Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  Given the trial court's credibility determination, Petitioner's claim is wholly unsupported and therefore must fail.

Petitioner has failed to establish that counsel's performance was deficient.  Based on counsel's testimony, his representation was within "the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### F. Ground Six

As ground six, Petitioner claims that counsel was ineffective because he failed to interview, depose, and subpoena Joe Purvis (Quigley's ex-husband).  Petitioner raised this ground in his Rule 3.850 motion.  After an evidentiary hearing on the issue, the court denied the motion with respect to this claim, stating in pertinent part:

> In the Defendant's fourth ground for relief, the Defendant claims that defense counsel failed to adequately investigate the Defendant's case including investigating, subpoenaing, and deposing Joe Purvis, Ms. Quigley's ex-husband. (Defendant's Motion at 22.) Mr. Purvis was also working as a confidential informant and was present when

44

the Defendant sold or delivered the crack cocaine to Ms. Quigley. The Defendant claims that he told defense counsel that Mr. Purvis was willing to testify on the Defendant's behalf, specifically that Ms. Quigley had framed the Defendant. Although the Defendant claims that defense counsel assured the Defendant that he was going to interview Mr. Purvis, the Defendant asserts that no such pretrial investigation occurred. At the evidentiary hearing, defense counsel testified as follows:

> State:  Regarding ground four, the defendant now claims that he was in jail in Duval County with Joe Purvis, who is the ex-husband of the confidential informant in this case. Did he ever tell you that?
>
> Defense Counsel:  No, ma'am, he didn't.
>
> State:  Did you attempt to find Joe Purvis?
>
> Defense Counsel:  One time I was planning to depose Joe Purvis, because I thought the state was going to call him. Detective Michon was asked to serve him with a subpoena. He was not found. And the state said they weren't going to pursue him either.
>
> State:  He was, in fact, a state witness, correct?
>
> Defense Counsel: Yes.
>
> State: Did the defendant ever tell you that he should be a defense witness?
>
> Defense Counsel: No.
>
> State: Did the defendant ever tell you that Joe Purvis would say that

>Nellie Purvis lied and set up John
>Bogins?
>
>Defense Counsel: He didn't tell me
>that.
>
>State:  Do any of your notes reflect
>that he told you any of that?
>
>Defense Counsel: No, ma'am.
>
>State:   What would your response
>have been had he told you anything
>like that?
>
>Defense Counsel: If he told me that,
>I would have contacted Joe Purvis.
>If he was in jail, I'd have
>contacted him there. If not, I would
>have attempted to locate him on the
>street. If he was not found, I would
>have moved for a continuance and
>told Judge Buttner why and -- why he
>was essential for the defense.

>(Exhibit "E," pages 25-26.)[17] This Court
>specifically finds defense counsel's testimony
>both more credible and persuasive than the
>Defendant's testimony and allegations.
>Laramore v. State, 699 So.2d 846 (Fla. 4th DCA
>1997). This Court accepts defense counsel's
>testimony that the Defendant did not inform
>him of any statements made by Joe Purvis.
>Accordingly, the Defendant has failed to
>establish error on the part of counsel.
>Strickland, 466 U.S. at 687. Therefore, ground
>four is denied.

Resp. Ex. at 471-73.  Upon Petitioner's appeal, Petitioner did not

raise the issue in his briefs.  See Resp. Exs. AA; CC.

Respondents contend, and this Court agrees, that the claim is

procedurally barred since the issue was raised in a procedurally

---

[17] See EH Tr. at 334-35.

incorrect manner in state court.   See Response at 38-40. Exhaustion requires that an appeal be taken from the denial of a post-conviction motion.   See Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979); Rodwell v. Singletary, 114 F.Supp.2d 1308, 1312 (M.D. Fla. 2000).   Furthermore, "in an appeal of a Rule 3.850 order after an evidentiary hearing, the movant is required to file an appellate brief, and a waiver of a claim results from submission of a brief without argument on a claim."   Torres v. Sec'y, Dep't of Corr., No. 8:07-cv-1383-T-24TGW, 2008 WL 1897600, at *10 (M.D. Fla. Apr. 28, 2008) (citations omitted); see also Stevens v. Sec'y, Dep't of Corr., No. 8:10-cv-2481-T-30AEP, 2011 WL 5359928, at *3 (M.D. Fla. Nov. 1, 2011).   Because Petitioner received an evidentiary hearing on his Rule 3.850 motion, any issue not raised in his appellate brief on appeal of the denial of the motion was waived.   See Cortes v. Gladish, 216 Fed. Appx. 897, 899-900 (11th Cir. 2007) (per curiam) (footnote omitted) (not selected for publication in the Federal Reporter).   Petitioner has not shown either cause[18] excusing the default or actual prejudice resulting from the bar.   Moreover, he has failed to identify any fact

---

[18] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S.Ct. at 1318 (citation omitted).   As shown in the alternative merits analysis, this ineffectiveness claim lacks any merit.   Therefore, Petitioner has not shown that he can satisfy an exception to the bar.

warranting the application of the fundamental miscarriage of justice exception.

Even assuming arguendo that Petitioner exhausted this claim in state court, he is not entitled to relief. As previously stated, the trial court adjudicated the merits of the claim. Thus, there is a qualifying state court decision. Upon a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. After the evidentiary hearing, finding counsel's testimony to be more persuasive, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Bogins. Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. Thus, given the trial court's credibility determination, Petitioner's claim is wholly unsupported and therefore must fail. As the post-conviction court ruled with respect to this issue, Petitioner failed to establish error on the

part of counsel.  Therefore, Petitioner's ineffectiveness claim is without merit since he has not shown deficient performance, the first prong of the two-part <u>Strickland</u> test.[19]

## G. Ground Seven

As ground seven, Petitioner claims counsel was ineffective because he solicited inadmissible hearsay, failed to properly object to harmful hearsay testimony, and failed to preserve the issue for appellate review.  Petitioner raised this ground in his Rule 3.850 motion, and the court denied the motion with respect to this claim, stating in pertinent part:

> In the Defendant's fifth ground, he argues that defense counsel was ineffective for soliciting inadmissible hearsay and failing to properly object to testimony related to Joe Purvis who was not called as a witness at trial. This Court has reviewed the testimony that the Defendant has labeled as improper hearsay. While the Defendant labels defense counsel's objections as "feeble" and "not properly grounded," the standard is reasonably effective counsel, not perfect or error-free counsel. <u>Coleman</u>, 718 So.2d at 829. In three of the instances, defense counsel properly objected to the hearsay statements, and this Court finds no error. (Exhibit "C," pages 66-67, 105.) As to the other four instances, the Defendant's complaint centers on the references to Mr. Purvis who was not called as a witness at trial. (Exhibit "C," pages 70, 89, 99-100, 147.) As explained in

---

[19] Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  <u>Ward</u>, 592 F.3d at 1163.

> ground four <u>supra</u>, Mr. Purvis, who was the
> State's witness, could not be found before the
> trial and the Defendant did not tell defense
> counsel that he wanted to call him as a
> defense witness. (Exhibit "E," pages 25-26.)
> Therefore, as the Defendant has failed to show
> error on the part of counsel, the Defendant's
> fifth ground is denied. <u>Strickland</u>, 466 U.S.
> at 687.

Resp. Ex. X at 473.  On Petitioner's appeal, he did not raise the issue in his briefs.  <u>See</u> Resp. Exs. AA; CC.

Respondents contend, and this Court agrees, that the claim is procedurally barred since the issue was raised in a procedurally incorrect manner in state court.  <u>See</u> Response at 42-43.  As previously explained with respect to ground six, exhaustion requires that an appeal be taken from the denial of a post-conviction motion.  Petitioner has not shown either cause[20] excusing the default or actual prejudice resulting from the bar.  Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming arguendo that Petitioner exhausted this claim in state court, he is not entitled to relief.  As set forth above, the trial court adjudicated the merits of the claim.  Thus, there is a qualifying state court decision.  Upon a thorough review of the

---

[20] As previously stated, to overcome the default, petitioner must also show that the underlying ineffectiveness claim is "a substantial one," meaning that the claim has "some merit." <u>Martinez</u>, 132 S.Ct. at 1318 (citation omitted).  As reflected in the alternative merits analysis, this ineffectiveness claim lacks any merit.  Therefore, Petitioner has not shown that he can satisfy an exception to the bar.

record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.  In the Petition, Petitioner refers to Detective Michon's trial testimony on direct examination by the prosecutor:

> Q:  Prior to going to the Winn-Dixie, did you give Ms. Quigley money from the Clay County Sheriff's Office drug fund?
>
> A   Yes, I did, one hundred dollars.
>
> Q   What happened?  What did you observe at the Winn-Dixie from the car?
>
> A   We had -- well, the first time I observed the defendant pull up and we got him there on a ruse, as far as we told him that we needed a jump-start.  Well, Ms. Quigley told him that they needed a jump-start.  That was just to get him there sooner.  Like I say, it was very hot that day and they said they were kind of stranded so -- we wanted to expedite the deal, so we told him we needed a jump-start.
>
> He showed up, gave them a jump-start, they asked if he had the crack, **he said I'll be back in five minutes –**

> [DEFENSE COUNSEL]: I'll object to any
> hearsay, Your Honor.
>
> COURT: Overruled.

Tr. at 104-05 (emphasis added).

As reflected above, counsel objected based on hearsay. Thus, Petitioner has failed to establish that counsel's performance was deficient. Counsel's representation was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.[21]

## H. Ground Eight

As ground eight, Petitioner claims that counsel was ineffective because he failed to object to Quigley's in-court identification of Bogins, which was based on a suggestive out-of-court identification. Petitioner raised this ground in his Rule 3.850 motion, and the post-conviction court denied the motion with respect to this claim, stating in pertinent part:

> In the Defendant's sixth ground, he argues that defense counsel was ineffective for failing to object to Ms. Quigley's in-court identification of the Defendant which was based on a "suggestive" out-of-court identification of the Defendant. Specifically, the Defendant complains that at her deposition Ms. Quigley was unable to describe the

---

[21] See Davis, 341 F.3d at 1316.

52

Defendant. He also asserts that the State employed an unnecessarily suggestive procedure when the State allowed Ms. Quigley to view the videotape of the drug transaction before the trial. The test for suppression of an out-of-court identification is two-fold: "(1) whether the police used an unnecessarily suggestive procedure to obtain the out-of-court identification; and (2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." Fitzpatrick v. State, 900 So.2d 495, 517-18 (Fla. 2005), quoting Rimmer v. State, 825 So.2d 304, 316 (Fla. 2002). If the procedures used by the police in obtaining the out-of-court identification were not unnecessarily suggestive, the Court need not consider the second part of the test. Rimmer, 825 So.2d at 316. However, should the Court find the police procedure to be unnecessarily suggestive, the Court should consider the following factors in determining whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification: the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Gordon v. State, 390 So.2d 341, 343 (Fla. 1980).

At her deposition, Ms. Quigley testified that Joe Purvis, her husband at the time and also a confidential informant, set-up the deal under Detective Michon's direction:

> Defense Counsel: Did your husband, in fact, set up a deal for you to do?
>
> Ms. Quigley: Yes.
>
> Defense Counsel: How did he go about doing that.

Ms. Quigley: Called him on the phone.

Defense Counsel: Called who on the phone?

Ms. Quigley: I guess John Bogins. I think he called him by Tim or something.

Defense Counsel: Tim?

Ms. Quigley: He had a fake name. Yeah.

(R. at 87.)[22] Mr. Purvis arranged for he and Ms. Quigley to meet the Defendant at the Winn-Dixie parking lot on the corner of Knight Boxx and Blanding. (R. at 87-90.) Ms. Quigley said that they met the Defendant while it was still daylight and that after they asked the Defendant for the crack, he left the parking lot. (R. 88-91.) When the Defendant returned a short time later, Ms. Quigley and Mr. Purvis gave the Defendant the $100 in buy money and the Defendant gave the crack to Ms. Quigley. (R. at. 88-91.) Ms. Quigley testified that this was the only time that she had met the Defendant and described him as a Black male, taller than her, with a thin build, and who may have had braided hair. (R. at 94-95.) Near the conclusion of her direct testimony, the State played the videotape of the drug transaction, seemingly to verify that she, Mr. Purvis, and the Defendant, are the persons on the videotape. (R. at 98.) Ms. Quigley then testified that the person who left the parking lot the first time, was the same person who returned in the car and gave her the crack cocaine. (R. 98-99.) At trial, Ms. Quigley identified the Defendant as the man who she and Mr. Purvis met at the Winn-Dixie parking lot:

---

[22] See Resp. Ex. C at 87.

> State: And did you make contact with
> the person who you were meeting?
>
> Ms. Quigley: Yes, ma'am.
>
> State: And who was that person?
>
> Ms. Quigley: The man in the blue
> shirt with the braids, John Bogins.

(Exhibit "C," page 70.) Having reviewed the
record, this Court finds that no unnecessarily
suggestive procedures were used to obtain the
out-of-court identification.

Even assuming _arguendo_ that the procedure
was unnecessarily suggestive, under the
totality of the circumstances the procedure
did not give rise to a "substantial likelihood
of irreparable misidentification" of the
Defendant. Detective Michon monitored the
videotaping of the drug transaction, and he
identified the Defendant as the person
involved in the drug transaction. (R. at 50-
55, 60; Exhibit "C," pages 102-06.) The
videotaped drug transaction also was shown to
the jury at trial. (Exhibit "C," at 75-77.)
Further, when the Defendant was initially
contacted by Detective Michon on June 12,
2001, he told the Detectives that his name was
"Tim Johnson." (R. at 59-62; Exhibit "G.")
Although this statement was not heard by the
jury because the Court granted the Defense's
motion in limine, it is yet another piece
connecting the Defendant to the instant drug
transaction. (Exhibits "G," "H.")
Consequently, this Court finds that there was
no substantial likelihood of irreparable
misidentification of the Defendant, and ground
six is denied.

Resp. Ex. at 473-76. Following Petitioner's appeal, the appellate

court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the

merits, there are qualifying state court decisions. Thus, the

55

Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Petitioner is not entitled to relief on the basis of this claim.   Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.   See Response at 45-48.

## I. Ground Nine

As ground nine, Petitioner claims that counsel was ineffective because he failed to inform Petitioner of the consequences of rejecting the State's plea offer of thirteen months and the possibility of the imposition of a thirty-year sentence if he proceeded to trial and the jury found him guilty of the charge. Petitioner raised this ground in his Rule 3.850 motion, and the court denied the motion with respect to this claim, stating in pertinent part:

> In the Defendant's seventh and eighth
> grounds, he claims that defense counsel

56

rendered ineffective assistance by failing to
inform him that, if convicted, he could be
classified as a Habitual Felony Offender and
sentenced to a maximum term of thirty years of
incarceration.  At the evidentiary hearing,
defense counsel testified as follows:

> State:  Did you inform the defendant
> that the state could ask that he be
> sentenced as a habitual offender?
>
> Defense Counsel:  I told him if they
> prove the prior convictions they
> could have. At the time I meant
> [sic] with Mr. Bogins, they had not
> filed that notice, and I told him
> that too.
>
> State:  But you did inform him that
> his history would support a habitual
> offender sentence?
>
> Defense Counsel:  That's correct.
>
> State:  And you informed the
> defendant that the state had offered
> him 13 months Florida State Prison,
> correct?
>
> Defense Counsel:  Correct.
>
> State:  And what did he do in
> response to that offer?
>
> Defense Counsel:  He rejected the
> offer and advised Judge Buttner that
> he was going to hire private
> counsel.
>
> State:  And did he ever hire private
> counsel?
>
> Defense Counsel: Judge Buttner gave
> him a continuance for a period of
> time, and he came back to court

> without private counsel, and then I
> remained on the case.[23]
>
> State:  And did the defendant choose
> to go to trial rather than plead
> guilty?
>
> Defense Counsel:  He did.

> (Exhibit "E," pages 27-28.)[24] This Court
> specifically finds defense counsel's testimony
> both more credible and persuasive than the
> Defendant's testimony and allegations.
> <u>Laramore v. State</u>, 699 So.2d 846 (Fla. 4th DCA
> 1997). This Court accepts defense counsel's
> testimony that he informed the Defendant
> that[,] if convicted, he could be sentenced as
> a Habitual Felony Offender. Accordingly, the
> Defendant has failed to establish error on the
> part of counsel. <u>Strickland</u>, 466 U.S. at 687.
> Therefore, grounds seven and eight are denied.

Resp. Ex. X at 476-77.  Following Bogins' appeal, the appellate court affirmed the denial per curiam.

The appellate court may have affirmed the denial of the post conviction motion on the merits.  If the appellate court addressed the merits, there are qualifying state court decisions.  Assuming so, this claim will be addressed applying the deferential standard for federal court review of state court adjudications.  Having reviewed the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and

---

[23] <u>See</u> Resp. Ex. A, Trial Court Docket, at 5.

[24] <u>See</u> EH Tr. at 336-37.

were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even absent a decision entitled to deferential review under AEDPA, this Court finds this challenge to be without merit. The trial court's conclusion is fully supported by the record. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner Bogins. The post-conviction court accepted defense counsel's testimony that he had informed Bogins that, if convicted, he could be sentenced as a Habitual Felony Offender. See Resp. Ex. X at 477. Bogins has not rebutted the trial court's credibility finding by clear and convincing evidence. Thus, given the trial court's credibility determination and a record supporting that conclusion, Petitioner's claim is wholly unsupported and therefore must fail.

Petitioner has failed to establish that counsel's performance was deficient. Based on counsel's testimony, his representation was within the wide range of professionally competent assistance. As the post-conviction court ruled with respect to this issue, Petitioner failed to establish error on the part of counsel. Therefore, Petitioner's ineffectiveness claim is without merit

since he has not shown deficient performance, the first prong of the two-part <u>Strickland</u> test.[25]

### J. Ground Ten

As ground ten, Petitioner claims that counsel was ineffective because he failed to exclude the cocaine based on alleged tampering and/or a chain of custody violation. Petitioner raised this claim in his Rule 3.850 motion. Ultimately, after an evidentiary hearing, the trial court denied the motion with respect to this issue, stating:

> In the Defendant's "Ground Nine," he alleges that defense counsel was ineffective for "failing to exclude the cocaine due to a probability of tampering and/or proper chain of custody violation." (Defendant's Motion at 4.) Initially, this Court notes that to the extent the Defendant appears to be attempting to challenge the admissibility of the evidence against him, the Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking post conviction relief. <u>Betts v. State</u>, 792 So.2d 589 (Fla. 1st DCA 2001); <u>Jackson v. State</u>, 640 So.2d 1173 (Fla. 2d DCA 1994).
>
> Moreover, a review of the record shows that the Defendant's claim is without merit. At the August 7, 2007 evidentiary hearing, defense counsel testified as follows:
>
> > State: Regarding the actual number of rocks of crack that were involved in this sale, did you address with either Detective Michon or with the

---

[25] The Court need not address the prejudice prong since Petitioner has failed to demonstrate that counsel's performance was deficient. <u>See</u> <u>Ward</u>, 592 F.3d at 1163.

FDLE analyst the actual number of crack rocks?

Defense Counsel: I remember the weight of .09 grams in the report. Ms. Quigley testified that she had obtained about five or six pieces of rocks. It was brought out on direct examination by Ms. Dixon during the trial by the -- during the FDLE analyst's testimony -- that the handling of these rocks frequently causes them to break apart.

State:  Okay. Did you find it significant at all that there was some kind of discrepancy between the actual number of pieces?

Defense Counsel: No, I didn't.

State:  And was Detective Michon clear in his testimony that he received the crack from Ms. Purvis and put it directly into property that day?

Defense Counsel:  That was his testimony, yes.

State:  And was there, in fact, a clear chain of custody with that evidence, the crack?

Defense Counsel: Yes, it was.

. . .

State:  Did you have any evidence on which to base an allegation that the evidence had been tampered with?

Defense Counsel:  No, ma'am.

(Exhibit "E," pages 22-25.)[26] Based on defense counsel's testimony, this Court finds that it was defense counsel's tactical decision not to challenge the admissibility of the cocaine based on a claim of alleged tampering or improper chain of custody, and as such, this cannot be deemed to be ineffective assistance. Songer v. State, 419 So.2d 1044 (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, "Ground Nine" is denied.

Resp. Ex. Z at 3-4 (footnote omitted).  On Petitioner's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

---

[26] See EH Tr. at 331-32, 334.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit. Bogins has not rebutted the trial court's credibility finding by clear and convincing evidence. Thus, given the trial court's credibility determination in favor of believing counsel's testimony over that of Bogins, Petitioner's claim is wholly unsupported and therefore must fail. Given that counsel was aware of the actual weight of the cocaine and knew that handling of the rocks frequently causes them to break apart as well as counsel's conclusions that there was a clear chain of custody and no evidence of tampering, his representation was within the wide range of professionally competent assistance. Thus, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. <u>See</u> Response at 50-51.

### K. Ground Eleven

As ground eleven, Petitioner claims that the trial court lacked subject matter jurisdiction to enter the judgment and sentence when the State filed a deficient Information and that the State committed fraud upon the court in charging Petitioner with sale or delivery of cocaine when he was never arrested for the crime. Petitioner raised this claim in his second Rule 3.850

motion, filed September 11, 2007.  Resp. Ex. X at 414-21.  The trial court denied the motion with respect to this issue, stating:

> In the Defendant's Motion for Post Conviction Relief filed on September 13, 2007, the Defendant raises two grounds. In the first ground, the Defendant claims that the Court lacked subject matter jurisdiction to convict and sentence the Defendant where the Defendant claims that he was not arrested for the instant charges.  The Defendant raised a similar claim in ground two <u>supra</u>, which this Court has denied. The Arrest Warrant in the instant case was issued on June 19, 2001. (Exhibit "D.") The Defendant was subsequently charged by Information for Sale or Delivery of Cocaine on February 7, 2002. (Exhibit "1.") Consequently, the Defendant's instant [claim] is denied.

Resp. Ex. X at 477-78.  On Petitioner's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court

64

proceedings.   Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim, nevertheless, is without merit. As previously explained with respect to ground four, in which Petitioner makes similar assertions, the trial court's jurisdiction was invoked in this case by the State's filing of the Information. For a defective Information to be a cognizable claim in a federal habeas corpus action, the charging document must be so defective that it deprives the court of jurisdiction.   DeBenedictis v. Wainwright, 674 F.2d 841, 842 (11th Cir. 1982) (citations omitted) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction.").

Under Florida law, the state circuit courts have jurisdiction over all felonies.  See Fla. Stat. § 26.012(2)(d). Moreover, the Information, see Resp. Ex. C at 4, properly set forth the elements of sale or delivery of cocaine, and therefore met the minimum requirement for invoking the jurisdiction of the state circuit court.  Additionally, the Information contains the required sworn oath of the Assistant State Attorney, certifying that the

allegations in the Information "are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged," that the prosecution "is instituted in good faith," and "that testimony under oath has been received from the material witness(es) for the offense."  Such a sworn oath by the prosecutor that she received testimony under oath from the material witness(es) for the offense is sufficient pursuant to applicable Florida law.  See Fla. R. Crim. P. 3.140(g).

Undoubtedly, the trial court had subject matter jurisdiction over Bogins' case since the Information charged him with sale or delivery of cocaine in violation of Florida Statutes section 893.13(1)(a)1.  See Resp. Ex. C at 4; EH Tr. at 317-22.  Thus, Petitioner is not entitled to habeas corpus relief on the basis of this claim.

## L. Ground Twelve

As ground twelve, Petitioner claims that his conviction in the instant case violates the prohibition against double jeopardy because of another criminal case, in which he was convicted of possession of cocaine and served six months in the Duval County Jail.  Petitioner raised this claim in his August 22, 2007 motion to correct illegal sentence.  Resp. Ex. X at 373-413.  In denying the motion, the trial court stated:

> [T]he Defendant claims that his conviction
> violates the prohibition against double
> jeopardy.  Rule 3.800(a) provides a remedy for
> illegal sentences.  However, the Defendant's

66

> argument is an attack on his convictions in
> Clay and Duval Counties.  A challenge to a
> conviction is not cognizable under Rule
> 3.800(a).  See Oxendine v. State, 852 So.2d
> 286 (Fla. 5th DCA 2003).  Accordingly, the
> Defendant's claim is denied.

Resp. Ex. X at 449.  Petitioner appealed the denial of the Rule

3.800 motion and filed a brief.  Resp. Ex. S.  The State filed a

notice that it would not file an Answer Brief.  Resp. Ex. T.  The

appellate court affirmed the denial per curiam.  Bogins, 991 So.2d

858.

Respondents contend, and this Court agrees, that the claim is

procedurally barred since the issue was raised in a procedurally

incorrect manner in state court.  See Response at 52-53.

Petitioner has not shown either cause excusing the default or

actual prejudice resulting from the bar.  Moreover, he has failed

to identify any fact warranting the application of the fundamental

miscarriage of justice exception.

Even assuming arguendo that Petitioner properly exhausted this

claim in state court, Petitioner's claim is, nevertheless, without

merit.  In the instant case, Petitioner was charged with sale or

delivery of cocaine, occurring on April 10, 2001, in Clay County.

Resp. Ex. C at 4, Information, filed February 27, 2002; Resp. Ex.

X at 380, Arrest Warrant, issued June 19, 2001.  In a separate

criminal case, Petitioner was arrested in Duval County on August

17, 2001, for possession of cocaine and cannabis, Resp. Ex. X at

407, and was arraigned on August 18th, at which time the judge

informed Bogins about the Clay County warrant for sale of cocaine, id. at 385.   Bogins was sentenced to six months in jail for the Duval County charges, with credit for time served, and was released on February 7, 2002.   Id. at 388, 390, 391, 394. The Duval County and Clay County criminal offenses are based on separate criminal episodes or transactions.   After completing his jail sentence in Duval County for that separate criminal conviction, id. at 388, Petitioner faced the Clay County charge in the instant case for the offense of sale or delivery of cocaine that he had committed on April 10, 2001.   Petitioner's double jeopardy claim is without merit, and therefore he is not entitled to habeas relief on this claim.   See Response at 53-58.

## IX. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail.   Knowles, 556 U.S. at 123.   The remainder of Petitioner's claims are either procedurally barred or without merit. Accordingly, for these reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## X. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

69

Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of August, 2012.

MARCIA MORALES HOWARD
United States District Judge

```
sc 4/24
c:
John Anthony Bogins
Ass't Attorney General (Heller)
```